UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HAMMER & STEEL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| K & S ENGINEERS, INC., | ) | No. 14-cv-10001 |
| EDWARD KRAEMER & SONS, INC., | ) | |
| KENNY CONSTRUCTION COMPANY, | ) | Judge Joan B. Gottschall |
| FEDERAL INSURANCE COMPANY, | ) | |
| TRAVELERS CASUALTY AND | ) | |
| SURETY COMPANY OF AMERICA, | ) | |
| FIDELITY AND DEPOSIT COMPANY | ) | |
| OF MARYLAND, AND LIBERTY MUTUAL | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Hammer & Steel, Inc. ("Plaintiff" or "H&S") and Imperial Crane Services, Inc. ("Imperial") bring cross-motions for sanctions against each other arising from their failed settlement agreement. Imperial seeks an award of fees and costs against Plaintiff's counsel, David M. Duree, pursuant to 28 U.S.C. § 1927. Plaintiff requests an award of fees against Imperial and its attorneys, Ryan Warren and Dmitry Shifrin, jointly and severally, pursuant to Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927. For the reasons set forth herein, Plaintiff's motions for sanctions are denied, and Imperial's motion for sanctions is granted in part and denied in part.

I. **BACKGROUND**

Two periods in time are at issue in the parties' cross-motions for sanctions: (1) Plaintiff's filing of a complaint against Imperial; and (2) Plaintiff's and Imperial's execution of a settlement

1

agreement. Before addressing the parties' pending motions for sanctions, the court provides a brief timeline of events surrounding these periods.

The genesis of this lawsuit is a construction accident allegedly involving Plaintiff's "Model 58 HS Vibratory Driver/Extractor System" (hereinafter referred to as Plaintiff's "equipment" or "hammer") and Imperial's crane. (*See* Compl. ¶ 5.) Several different companies—including K&S, Engineers, Inc. ("K&S"), which had leased Plaintiff's equipment, and Imperial—were performing work at the job site when the accident occurred on December 1, 2014.

On December 5, 2014, the project manager of Edward Kraemer & Sons, Inc. ("Kraemer"), one of the general contractors for the construction project, emailed Imperial and K&S that Plaintiff's equipment would be removed from the scene on December 8, 2014 to another location, where it could be inspected. (*See* Imperial's Mot. to Dismiss, Ex. B.) That same day, Imperial's counsel, Ryan Warren ("Warren"), sent a letter to Plaintiff's president, Joe Dittmeier ("Dittmeier"), and to representatives of other participants in the construction project. (*See* Compl. Ex. B.) The letter advised of the parties' obligations to avoid spoliation of evidence related to the incident. Warren further wrote, "It [was] Imperial's plan to collect and maintain the job storage connection assembly this coming Monday morning." (*Id.*)

Over the next several days, Warren and Kraemer's counsel exchanged emails to secure the property off-site and to coordinate inspections. Dittmeier was carbon copied on these emails. In one email, dated December 8, 2014, Warren objected to a proposal by Kraemer's counsel to store the equipment uncovered at the address, 15 N 320 Route 25, East Dundee, IL 60118—a property that Kraemer had leased. (*See* Imperial's Mot. to Dismiss, Ex. H.) Imperial's counsel reasoned that "all of the equipment . . . will be left completely exposed to weather during what

may very well be years of controversy." (*Id.*)  Warren listed a series of conditions, including obtaining a valid travel permit and permission from the Occupational Safety and Health Administration, which Imperial suggested needed to be met before Imperial would participate in moving and storing the equipment.  The correspondence concluded by proposing a conference call to discuss Imperial's concerns so that "all parties, including K&S' injured employee, can be fully protected." (*Id.*)

On December 9, 2014, Plaintiff's counsel, David M. Duree ("Duree"), sent a letter to K&S terminating the rental agreement and seeking the return of Plaintiff's equipment. (Compl. Ex. D.)  Duree stated, "It is my understanding that the vibratory driver/extractor system is currently located at 15 N. 320 Route 25, East Dundee, Illinois 60118." (*Id.*)  Duree asked K&S to arrange for Plaintiff's retrieval of the equipment, after which Plaintiff would make the equipment "available for inspection, upon request, at the expense of the requesting parties" at Plaintiff's yard in Hazelwood, Missouri. (*Id.*)  Duree concluded the letter by notifying K&S that a "[f]ailure to return the equipment will be an act of conversion." (*Id.*)

Also on December 9, 2014, Kraemer's project manager sent an email at 5:51 a.m. to counsel for Imperial and Kraemer.  Dittmeier and other individuals were carbon copied on the email.  The project manager circulated the email to set up a conference call for later in the morning to discuss inspection and storage protocol of the equipment.  The email contained the information necessary to dial into the conference bridge.

Immediately after the call concluded, Imperial's counsel sent a follow-up email to memorialize the discussion.  Imperial's counsel wrote: "Below I attempt to list what we have all agreed to at this point.  If anyone disagrees, please reply to all with your suggested correction."

3

(Imperial's Mot. to Dismiss, Ex. K.) Among the bullet points was Imperial's representation that it would "work to find a more permanent, secure, and weather-safe storage facility." (*Id.*)

On December 11, 2014, Imperial's counsel, Warren, and Plaintiff's counsel, Duree, conferred by phone. According to Imperial's motion for sanctions, Warren requested ten additional days on behalf of Imperial to inspect Plaintiff's equipment. Warren claims that Duree promised to confer with his client and call Warren back.

Instead, Plaintiff filed suit on December 12, 2014. Upon receiving a copy of the complaint, Warren sent an email to Duree and representatives of the other interested parties. The email informed the group that Imperial offered to cover "five-days' rent at the rate paid by K&S for the hammer in order to allow for Imperial's (and other's) inspections." (Imperial's Mot. to Dismiss Ex. M.) The email continued: "This rent would start on the day following H&S' agreement to this offer." (*Id.*)

On December 17, 2014, Plaintiff, Imperial, and Kraemer reached a settlement agreement ("Agreement") that incorporated Imperial's December 12, 2014 offer. The Agreement, in pertinent part, provided for a storage and inspection protocol, as well as the following terms:

> 2. H & S will provide an employee to provide access to H &S facilities upon equipment arrival.
>
> 3. H & S will dismiss the Complaint against Imperial, without prejudice, with each party to bear their own court costs. The Complaint against K & S will remain pending.
>
> 4. H & S covenants not to sue Imperial or Kraemer for any claims asserted in the Complaint; however, H & S, Kraemer and Imperial each reserve the right to assert any other claims, including claims for contribution and indemnity, against one another in any personal injury lawsuit filed by Rudolph Das, his representatives and/or his estate.[1]

---

[1] Rudolph Das is the injured worker who filed a state court action on December 22, 2014 against Crane Machinery, Hammer Steel, Inc., Illinois State Highway Authority, Imperial Crane

> 5. Imperial will pay $2,500.00 within thirty (30) days by mailing a check in that amount directly to H & S.

(*See* ECF No. 25-1, Ex. A.)

On the same day Plaintiff and Imperial executed the Agreement, they appeared before the court on Plaintiff's motion for replevin, which Plaintiff had filed on December 15, 2014. Plaintiff's counsel, Duree, and counsel for Imperial, Dimitri Shifrin, informed the court that their clients had settled. Duree, however, interjected that, notwithstanding the Agreement, Plaintiff still sought an order of replevin. The court denied Plaintiff's request. In the court's view, Plaintiff provided no authority justifying its request for a replevin given that the parties had agreed to return the equipment to Plaintiff. Duree responded that his "understanding" of Plaintiff's agreement with Imperial was that "the lawsuit would be dismissed once the agreement was implemented." (*See* 12/17/14 Transcript of Proceedings at 21:20-22.) Duree added: "We can't implement that now. So, we are certainly not going to dismiss Imperial." (*Id.* 21:23-24.)

On December 18, 2014, Warren sent a letter to Duree. The letter reflected a phone conversation that Warren and Duree had held after the December 17, 2014 hearing. During that conversation, Warren and Duree expressed contrasting interpretations of their client's obligations under the Agreement. Warren's letter, *inter alia*, (i) reminded Plaintiff of its purported obligation to dismiss the complaint against Imperial; (ii) informed Plaintiff that its equipment remained sitting in a yard that Kraemer, not Imperial, had leased; and (c) advised Plaintiff that Imperial would file a motion to dismiss, unless Plaintiff provided Imperial with written assurance

---

Services, John Henry Foster Co., Kenny Construction Co., Kraemer Edward Sons, Inc., KS Engineers, Inc., PTC, and Terex. *See Rudolph Das v. Kenny Construction Co.*, No. 2014-L-013186 (Ill. Cir. Ct.).

by 10 a.m. on December 19, 2014 that Plaintiff would file a notice of dismissal of Imperial pursuant to the Agreement by close of business on December 22, 2012.

On December 19, 2014, Plaintiff filed a renewed motion for an order of replevin against K&S and Imperial. Plaintiff attached the Agreement as an exhibit to the motion. The motion sought the entry of an order directing Imperial to perform its obligations under the Agreement. Imperial responded by filing a motion to dismiss on December 22, 2014. Both motions were noticed to be heard on December 23, 2014.

On that day, counsel for Plaintiff (Duree) and Imperial (Warren and Shifrin), among others, appeared in court. Duree verified that he once again was seeking a replevin order against Imperial and K&S. Counsel for K&S and Imperial objected to the entry of a replevin order against their clients. In the end, Plaintiff agreed to continue its motion for replevin so that the interested parties could continue discussing the terms of a possible agreed order.

Following the hearing, Plaintiff and Imperial made three pertinent filings. First, on January 7, 2015, Plaintiff filed its Verified First Amended Complaint, naming K&S, Kraemer, Kenny Construction Company, Federal Insurance Company, Travelers Casualty and Surety Company of America, Fidelity and Deposit Company of Maryland, and Liberty Mutual Insurance Company as defendants. Plaintiff, however, did not name Imperial as a defendant to any of its claims. Second, on January 9, 2015, Plaintiff filed a response brief in opposition to Imperial's motion to dismiss.[2] Third, on January 15, 2015, Imperial filed a motion for sanctions against Duree pursuant to 28 U.S.C. § 1927, seeking an award of the fees and costs Imperial incurred in defending against Plaintiff's original complaint.

---

[2] Plaintiff now seeks reimbursement for the fees it incurred in preparing this response.

Thus, when Plaintiff and Imperial appeared before the court for status on January 21, 2015, Plaintiff and Imperial were no longer at issue—apart from Imperial's motion for sanctions. The court used the status hearing to ask a few preliminary questions about Imperial's motion for sanctions. Imperial's counsel explained that, although Imperial and Plaintiff had settled, Imperial believed that Plaintiff had breached the Agreement by refusing to dismiss Imperial. As a consequence, Imperial's position was that it no longer owed Plaintiff the $2,500 that it had agreed to pay Plaintiff pursuant to the Agreement. (*See* 01/23/15 Transcript of Proceedings, 9:1-4) ("[O]ur contention, frankly, your Honor, is the agreement was breached and now we are in a situation where we are not required to pay the $2,500."). Duree disagreed. He informed the court that Imperial owed his client $2,500, and that he would be cross-moving for sanctions.

## II. LEGAL STANDARD

### A. 28 U.S.C. § 1927

Section 1927 of Title 28 of the United States Code provides that "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. "The Seventh Circuit has explained that a court has discretion to impose § 1927 sanctions when an attorney has: (1) acted in an objectively unreasonable manner by engaging in serious and studied disregard for the orderly process of justice; (2) pursued a claim that is without a plausible legal or factual basis and lacking in justification; or (3) pursue[d] a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound." *Balijewel, Inc. v. John Hardy Ltd.*, No. 07-CR-3819, 2008 U.S. Dist. LEXIS 76791, at *16 (N.D. Ill. Sept. 24, 2008).

7

### B. Rule 11 Sanctions

Rule 11 of the Federal Rules of Civil Procedure provides that by presenting a pleading to the court, an attorney is representing that the pleading "is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation . . . [and] the factual contentions have evidentiary support, or . . . will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(1), (3). If a party violates Rule 11 by "making arguments or filing claims that are frivolous, legally unreasonable, without factual foundation, or asserted for an improper purpose," the court may impose an appropriate sanction after notice and a reasonable opportunity to respond. *Fries v. Helsper,* 146 F.3d 452, 458 (7th Cir. 1998). A frivolous claim is "one that is 'baseless and made without a reasonable and competent inquiry.'" *Id.* (quoting *Townsend v. Holman Consulting Corp.,* 929 F.2d 1358, 1362 (9th Cir. 1990) (en banc)). Rule 11 is not a fee-shifting statute; it is a "law imposing sanctions if counsel files with improper motives or inadequate investigation." *Mars Steel Corp. v. Cont'l Bank N.A.,* 880 F.2d 928, 932 (7th Cir. 1989) (en banc).

### III. ANALYSIS

#### A. Imperial's Motion for Sanctions

Imperial offers two grounds for imposing sanctions on Duree pursuant to Section 1927. First, Imperial argues that Duree should never have filed suit against Imperial because Plaintiff's claim against Imperial for replevin had no plausible legal or factual basis. . . ." (Imperial's Supp. Br. at 1, ECF No. 44.) Second, Imperial asserts that Duree should be sanctioned for repudiating the Agreement, when he refused to file a notice of dismissal and instead pressed forward with a motion for replevin and a renewed motion for replevin against Imperial.

With respect to the first ground, the court tests whether Duree had a plausible basis to bring a replevin action against Imperial by evaluating Plaintiff's allegations, the facts Duree knew at the time he filed suit on Plaintiff's behalf, and the elements of the claim. *See Lightspeed Meida Corp. v. Smith*, 761 F.3d 699, 708-09 (7th Cir. 2014).

"An action for replevin may be brought to recover wrongfully detained goods or chattels." *Rubloff Dev. Group, Inc. v. Supervalu, Inc.*, 863 F. Supp. 2d 732, 751 (N.D. Ill. 2012). In Illinois, replevin is a statutory remedy. *See* 735 ILCS 5/19-101. This statute provides:

> Whenever any goods or chattels have been wrongfully distrained, or otherwise wrongfully taken or are wrongfully detained, an action of replevin may be brought for the recovery of such goods or chattels, by the owner or person entitled to their possession.

*Id.* "The single ground for replevin is the plaintiff's right to possession of the specific goods or chattels described in the order for replevin at the time the order is sued." *See* Robert G. Markoff & Lawrence O. Taliana, *Replevin, Detinue, and Attachment* (available at http://www.iicle.com/links/CredRts09-Ch5-Markoff.pdf) (2009) (originally published in CREDITORS' RIGHTS IN ILLINOIS (Illinois Institute for Continuing Legal Education, 2009)).

Imperial contends that Duree knew Plaintiff's claim for replevin against Imperial was unsound because Duree knew that Kraemer—not Imperial—was storing Plaintiff's equipment. To Imperial's point, Plaintiff's president, Dittmeier, received an email on December 9, 2014 from Kraemer's counsel indicating that Kraemer would transport the equipment to its yard. It was thus no coincidence that Duree wrote a letter to K&S, dated December 9, 2014, confirming that it was his "understanding that the vibratory driver/extractor system [was] located at 15 N. 320 Route 25, East Dundee, Illinois 60118." (*Id.*) Imperial contends that Duree therefore had no basis to allege in the Verified Complaint that, after the construction accident occurred on

9

December 1, 2014, Imperial and K&S "took possession" of Plaintiff's equipment and "refused to return it to Plaintiff." (Compl. ¶ 14.)

Although this allegation was arguably incorrect, Plaintiff's theory of replevin, as expressed in subsequent briefing, was not that Imperial physically "possessed" the equipment on its own property. Rather, Plaintiff contended that Imperial *controlled* the equipment by insisting that it be transported, stored, and inspected on certain terms. As an example, Plaintiff cites to the December 8, 2014 email from Imperial's counsel, Warren, in which he stated that Imperial would not participate in moving or storing the equipment unless the parties to the email could agree on a "removal plan," "storage protocol," "inspection protocol," and "cost sharing plan." (*See* Imperial's Mot. to Dismiss, Ex. H.) In that same email, Warren cautioned that the equipment otherwise would be "left completely exposed to weather during what may very well be years of controversy." (*Id*.)

Against this backdrop, the court sees why Plaintiff was concerned. Plaintiff had an interest in putting its equipment back into commerce as soon as practicable. If Plaintiff requested its equipment from Imperial and K&S—the parties that allegedly controlled the equipment—and Imperial both refused Plaintiff's demand *and* had no lawful basis to hold it, then the court cannot say that Plaintiff had no plausible basis to bring a replevin action against Imperial. *See Evergreen Marine Corp. v. Div. Sales, Inc*., No. 01-cv-4933, 2003 U.S. Dist. LEXIS 3425, at *14-15 (N.D. Ill. Mar. 10, 2003) ("An allegation that a defendant has constructive possession--*i.e.*, 'such a control over the property that he may deliver the possession of it to the plaintiff'--is sufficient to meet the possession element of a replevin claim.") (quoting 66 Am. Jur. 2d, Replevin, § 19 (2001)).

But to be clear, the court is by no means finding that Plaintiff stated a claim against Imperial for replevin for allegedly "controlling" Plaintiff's equipment. *See WG Techs., Inc. v. Thompson*, No. 13-cv-304, 2013 U.S. Dist. LEXIS 65974 *5 (N.D. Ill. May 8, 2013 ) (finding that a proposed amended complaint failed to state a claim for replevin where the plaintiff alleged that the defendant was "wrongfully in control and possession of property owned by Plaintiff" but did not allege that the defendant had "wrongfully distrained (seized) or taken goods from Plaintiff"). As *Evergreen Marine Corp.* and *Thompson* reflect, courts within this district differ as to whether a plaintiff must allege another's possession, as opposed to control, of the plaintiff's chattel to state a claim for replevin. The court need not weigh in on this issue. Imperial predicates its motion for sanctions on the notion that Plaintiff's claim for replevin was *groundless*. Precedent such as *Marine Corp.*, however, suggest that Duree may have had a plausible legal and factual basis for Plaintiff's replevin claim. That is enough to avoid sanctions.[3]

The court next addresses Imperial's second proffered ground for sanctioning Duree: his moving for an order of replevin against Imperial on both December 17, 2014 and December 23, 2014, after Plaintiff had already agreed to dismiss Imperial from the suit. "If a lawyer pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound, the conduct is objectively unreasonable and vexatious" under Section 1927. *Riddle &*

---

[3] Imperial does not address whether Plaintiff had a basis for alleging a conversion claim. The court nevertheless notes that Plaintiff's claim for conversion against Imperial would also revolve around Imperial's alleged control or possession of Plaintiff's equipment. *See Cirrincione v. Johnson*, 703 N.E.2d 67, 70 (Ill. 1998) ("To prove conversion, a plaintiff must establish that (1) he has a right to the property; (2) he has an absolute and unconditional right to the immediate possession of the property; (3) he made a demand for possession; and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property.").

*Assocs. P.C. v. Kelly*, 414 F.3d 832, 835 (7th Cir. 2005) (citation omitted); *see also Dal Pozzo v. Basic Machinery Company, Inc.*, 463 F.3d 609, 613-14 (7th Cir. 2006).

Here, the court agrees with Imperial and finds that Duree's pursuit of a replevin order "unreasonably and vexatiously" multiplied the proceedings in this case. On two separate occasions, Duree asked the court to enter a replevin order based on the fact that Imperial had executed the Agreement. But that fact had no bearing on whether Plaintiff was entitled to a replevin order. If anything, the Agreement showed that Imperial was not refusing to return Plaintiff's equipment, as a replevin action requires, but *agreeing* to return it. *See Rubloff Dev. Group, Inc.,* 863 F. Supp. 2d at 751 ("A replevin action cannot be maintained until a counter-claimant has made a demand for the surrender of the property and the defendant has refused."). In fact, Duree repeatedly emphasized that the parties holding Plaintiff's equipment were agreeing to return it. (*See* 12/17/14 Transcript of Proceedings at 9:11-12; 12/23/14 Transcript of Proceedings at 5:5-12.) These admissions undermine both of Plaintiff's motions for replevin against Imperial because they show that Imperial was not refusing to return the equipment to Plaintiff when the motions were heard.

The reason Duree kept seeking a replevin order—notwithstanding the Agreement—was that *he* believed that the Agreement could not be implemented unless the court approved its terms. At the December 17, 2013 hearing on Plaintiff's first motion for replevin, Duree stated that it was *his* "understanding" that the "lawsuit would be dismissed [against Imperial] once the agreement was implemented." (*Id.* at 21:20-22.) Duree added: "We can't implement that now. So, we are certainly not going to dismiss Imperial." (*Id.* at 21:23-24.) Duree further remarked: "[M]y understanding is that the inspection protocol . . . will not go forward until we get an order

from the court permitting [Plaintiff's equipment] to be transported to St. Louis, where it could be tested by client, in the presence of everybody's experts." (*Id.* at 22:1-6.)

In other words, Duree filed two motions for replevin solely because he or his client sought judicial approval of the Agreement. But no language in the Agreement conditioned its implementation on the court's entry of an order. The Agreement was privately negotiated and executed. The court was never involved in the settlement. Nor, as the court has explained in a separate opinion denying Plaintiff's motion to enforce the Agreement, does the court have jurisdiction to order compliance with its terms. The Agreement does not mention the court, much less provide for judicial enforcement. Imperial, for its part, objected to the entry of a replevin order against it at the December 17, 2014 hearing and again at the December 23, 2014 hearing. Although Imperial consented to the protocol set forth in the Agreement, Imperial never agreed to being subject to judicial sanction if it failed to comply with the Agreement. A "reasonably careful attorney" would have known better than to continue requesting a replevin order against Imperial under these circumstances and in the absence of any authority justifying the request.

Having found Duree in violation of Section 1927, the court turns to the sanctions that Imperial requests. Imperial seeks all of the fees and costs it has incurred throughout this litigation. Although the court agrees that a sanction of some variety is appropriate, Imperial seeks too much. Nearly all of the fees Imperial's counsel has billed stem from their preparation of a motion to dismiss. But Imperial overlooks the fact that nothing required it to move to dismiss when it did. Plaintiff brought suit on December 12, 2012. Under Rule 12(a)(1)(A)(i), Imperial's responsive pleading was due "within 21 days after being served with the summons

13

and complaint."[4]  But nothing in the record indicates that Imperial was, in fact, served. (*See* Pl.'s Verified Resp. to Imperial's Mot. for Sanctions ¶ 13, ECF No. 47.)  And even if Imperial was served, it would have had until January 2, 2015 to file its motion to dismiss.

Imperial thus was under no obligation to move to dismiss, much less expedite the time period in which its responsive pleading was due.  Imperial could have opposed the motion for replevin on the ground that it had yet to be served with summons and copy of the complaint.  Or Imperial could have directed the court to Exhibit A of the motion for replevin, which indicated that Imperial and Plaintiff had settled the return of Plaintiff's equipment.  Imperial instead took the more aggressive approach of filing a motion to dismiss to be heard at the hearing on Plaintiff's renewed motion for replevin.   Although the court does not fault Imperial for this approach, it will not hold Duree responsible for the fees Imperial accrued in moving to dismiss.[5]

Setting aside those fees, the only other charges Imperial's counsel billed in connection with Plaintiff's renewed motion for replevin were:[6]

| 12/23/14 | Participate by phone in replevin hearing | .4 |

---

[4] Alternatively, if Imperial had timely waived service under Rule 4(d), its responsive pleading would have been due within 60 days after the request for a waiver was sent, or within 90 days after it was sent to the defendant outside any judicial district of the United States.  *See* Fed. R. Civ. P. 12(a)(1)(A)(ii).  The record does not, however, show that Imperial waived service, so the court focuses on the applicability of Rule 12(a)(1)(A)(i).

[5] Imperial also asks the court to consider Duree's disciplinary history.  The court, however, sees no purpose in entering that thicket, given the court's ruling granting Imperial's motion for sanctions against Duree based on his conduct *in this case*.

[6]  The court's reasoning for sanctioning Duree—causing Imperial's counsel to appear and argue against the renewed motion for replevin on December 23, 2014—does not apply to the December 17, 2014 hearing.  The December 17, 2014 hearing was already scheduled and set to go forward when the parties settled that same day.  So regardless of the position Duree took at the hearing, the proceeding would have taken place anyway.  Under these circumstances, holding Duree accountable for the fees Imperial occurred in attending the December 17, 2014 would be unnecessary because Imperial would have incurred those fees regardless of whether Duree continued to advocate for the entry of a replevin order.

12/23/14     Draft update email to _____ and client regarding hearing.     .5

Pursuant to 28 U.S.C. § 1927, the court therefore orders David Duree to reimburse Imperial for the .9 hours that Imperial's counsel spent in connection with Plaintiff's renewed motion for replevin.[7]

### B. Plaintiffs' Motions for Sanctions

Plaintiff's cross-motion for sanctions can best be described as a "tit-for-tat" in response to Imperial's motion for sanctions against Duree. Plaintiff primarily complains that Imperial's counsel "unreasonably and vexatiously multiplied the proceedings in this case by refusing to comply with" the Agreement. (Pl.'s Verified Motion for Attorney's Fees at 2, ECF No. 51.) Specifically, Plaintiff claims that Imperial breached the agreement by (a) refusing to pay Plaintiff $2,500 within thirty days of executing the Agreement, and (b) filing a motion to dismiss. As a consequence, Plaintiff argues, Plaintiff had to incur the cost of filing a motion to enforce the Agreement.

Plaintiff, however, can no more criticize Imperial for "refusing to comply with" the Agreement than it can defend its own actions after executing the Agreement. Duree openly repudiated the Agreement on December 17, 2014, when he said that Plaintiff would not dismiss Imperial.[8] Once he made this statement, Imperial's counsel had every right to withhold payment of the $2,500 it had agreed to pay Plaintiff under the Agreement. *See Tower Investors, LLC v. 111 East Chestnut Consultants, Inc.*, 371 Ill. App. 3d 1019, 1032 (1st Dist. 2007) ("When one

---

[7] Imperial's counsel also billed 4.2 hours on December 22, 2015, partly in preparation for Plaintiff's motion for replevin. But Imperial's counsel did not differentiate the time that it spent preparing to defend against the motion for replevin from the time spent on the motion to dismiss. As a result, the court cannot account for the 4.2 hours in calculating the cost of the proceeding to Imperial.

[8] Plaintiff's also likely repudiated by continuing to request a replevin order against Imperial, despite having agreed to dismiss Imperial from the case.

party repudiates a contract, the non-repudiating party is excused from performing or may continue to perform and seek damages for the breach.") (citations omitted).

Nor can Plaintiff credibly seek fees for paying its counsel to draft a response to Imperial's motion to dismiss. Plaintiff submitted that response on January 9, 2015. By that date, Plaintiff's response was completely unnecessary because Plaintiff had already filed its Verified First Amended Complaint in which Plaintiff removed Imperial as a defendant. The court accordingly denied Imperial's motion as moot at the next scheduled status hearing, since Plaintiff had withdrawn of all its claims against Imperial. (*See* Jan. 21, 2015 Order, ECF No. 33.)

Finally, Plaintiff argues that Imperial's counsel unnecessarily multiplied proceedings by moving for sanctions and filing a supplemental brief in support thereof. The court will not sanction Imperial's counsel on these grounds. To state the obvious, Plaintiff's argument presumes that Imperial's motion for sanctions is frivolous. It is not. Although the court did not rule entirely in Imperial's favor, the motion resulted in the entry of a sanction against Duree. As for Imperial's supplemental brief, the court expressly granted Imperial leave to file that document at the status hearing held on January 21, 2015. During this hearing, the court asked Imperial's counsel, Ryan Warren, whether he had provided the necessary billing records and other documentation for the court to consider a sanctions award under Seventh Circuit authority. Warren responded by asking the court for permission to file a "full brief, with everything that [the court] believe[d] [it] may need." (01/21/15 Transcript of Proceedings, 15:22-23.) After some additional discussion, the court replied: "All right. Well, I am going to give you leave to file it." (*Id.* 17:8-9.) Plaintiff's assertion that Imperial violated Rule 11 and Section 1927 by submitting a supplemental brief that the court granted Imperial leave to file is preposterous.

16

For these reasons, Plaintiffs' motions for sanctions are denied.

## IV.   CONCLUSION

Plaintiff's motions for sanctions are denied. Imperial's motion for sanctions is granted in part. Pursuant to Section 1927, the court orders Duree to reimburse Imperial for the .9 hours that Imperial's counsel spent in connection with Plaintiff's renewed motion for replevin.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED:   July 17, 2015