# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| HAMMER & STEEL, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 14-cv-10001 |
| v. ) | |
| ) | Judge Joan B. Gottschall |
| K & S ENGINEERS, INC., EDWARD ) | |
| KRAEMER & SONS, INC., KENNY ) | |
| CONSTRUCTION COMPANY, FEDERAL ) | |
| INSURANCE COMPANY, TRAVERLS ) | |
| CASUALTY AND SURETY COMPANY ) | |
| OF AMERICA, FIDELITY AND DEPOSIT ) | |
| COMPANY OF MARYLAND, and ) | |
| LIBERTY MUTUAL INSURANCE ) | |
| COMPANY, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION & ORDER

On July 17, 2015, this court ordered Plaintiff Hammer & Steel, Inc. ("Plaintiff" or "H&S") to show cause (1) how it had a Rule 11 basis to bring claims for conversion and replevin in its First Amended Complaint ("FAC"), in light of the state court protective order entered on December 24, 2014; and (2) how the FAC satisfies the amount-in-controversy requirement if the court disregards, as without a good faith basis, Plaintiff's claims for conversion and replevin. For the reasons set forth herein, the court finds that Plaintiff did not have a good faith basis to bring its claims for conversion and replevin. In addition, the amount-in-controversy requirement is not satisfied and Plaintiff's FAC is therefore dismissed.

## I. BACKGROUND

The genesis of this lawsuit is a construction accident allegedly involving Plaintiff's "Model 58 HS Vibratory Driver/Extractor System" (hereinafter referred to as Plaintiff's

"equipment" or "hammer") and a crane owned by Imperial Crane Services, Inc. ("Imperial"). (*See* Compl., Dkt. 1 ¶ 5.) Several different companies—including K&S, Engineers, Inc. ("K&S"), which had leased Plaintiff's equipment, and Imperial—were performing work at a job site when the accident occurred on December 1, 2014, injuring Rudolph Das ("Das"), one of the workers at the construction project.

On December 5, 2014, the project manager of Edward Kraemer & Sons, Inc. ("Kraemer"), one of the general contractors for the construction project, emailed Imperial and K&S that Plaintiff's equipment would be removed from the scene on December 8, 2014 to another location, where it could be inspected. (*See* Imperial's Mot. to Dismiss, Dkt. 15, Ex. B.) That same day, Imperial's counsel, Ryan Warren ("Warren"), sent a letter to Plaintiff's president, Joe Dittmeier ("Dittmeier"), and to representatives of other participants in the construction project. (*See* Compl., Dkt. 1, Ex. B.) The letter advised of the parties' obligations to avoid spoliation of evidence related to the accident.

Over the next several days, Imperial and Kraemer's counsel exchanged emails to secure the property off-site and to coordinate inspections. Dittmeier was carbon copied on these emails. In one email, dated December 8, 2014, Imperial objected to a proposal by Kraemer's counsel to store the equipment uncovered at the address, 15 N 320 Route 25, East Dundee, IL 60118—a property that Kraemer had leased. (*See* Imperial's Mot. to Dismiss, Dkt. 15, Ex. H.) Imperial's counsel reasoned that "all of the equipment . . . will be left completely exposed to weather during what may very well be years of controversy." (*Id.*) Imperial's counsel listed a series of conditions, including obtaining a valid travel permit and permission from the Occupational Safety and Health Administration, which Imperial suggested were needed to be met before Imperial would participate in moving and storing the equipment. The correspondence concluded

by proposing a conference call to discuss Imperial's concerns so that "all parties, including K&S' injured employee, can be fully protected." (*Id.*) According to the record provided to the court, Dittmeier did not voice any objections regarding Imperial's plan.

The next day, December 9, 2014, Plaintiff's counsel, David M. Duree ("Duree"), sent a letter to K&S terminating the rental agreement and seeking the return of Plaintiff's equipment. (Compl., Dkt. 1, Ex. D.) Duree stated, "It is my understanding that the vibratory driver/extractor system is currently located at 15 N. 320 Route 25, East Dundee, Illinois 60118." (*Id.*) Duree asked K&S to arrange for Plaintiff's retrieval of the equipment, after which Plaintiff would make the equipment "available for inspection, upon request, at the expense of the requesting parties" at Plaintiff's yard in Hazelwood, Missouri. (*Id.*) Duree concluded the letter by notifying K&S that a "[f]ailure to return the equipment will be an act of conversion." (*Id.*)

Also on December 9, 2014 at 5:51 a.m., Kraemer's project manager sent an email to counsel for Imperial and Kraemer. Dittmeier and other individuals were carbon copied on the email. The project manager circulated the email to set up a conference call for later in the morning to discuss inspection and storage protocol of the equipment. The email contained the information necessary to dial into the conference bridge. Immediately after the call concluded, Imperial's counsel sent a follow-up email to memorialize the discussion: "Below I attempt to list what we have all agreed to at this point. If anyone disagrees, please reply to all with your suggested correction." (Imperial's Mot. to Dismiss, Dkt. 15, Ex. K.) Among the bullet points was Imperial's representation that it would "work to find a more permanent, secure, and weather-safe storage facility." (*Id.*) Again, nothing in the record demonstrates that Plaintiff voiced any objection to Imperial's plan at this time.

3

Plaintiff filed suit on December 12, 2014 against K&S and Imperial. (Compl., Dkt. 1.) The complaint alleged replevin, conversion, and breach of contract—all associated with Plaintiff's inability to achieve return of the equipment. (*Id.*) The breach of contract claim was based on missed payments by K&S in the amount of $27,000 for the use of the equipment. (*Id.*) Upon receiving a copy of the complaint, Imperial sent an email to Plaintiff's counsel and representatives of the other interested parties. The email informed the group that Imperial offered to cover "five-days' rent at the rate paid by K&S for the hammer in order to allow for Imperial's (and other's [sic]) inspections." (Imperial's Mot. to Dismiss, Dkt. 15, Ex. M.) The email continued: "This rent would start on the day following H&S' agreement to this offer." (*Id.*)

On December 17, 2014, Plaintiff, Imperial, and Kraemer reached an agreement to secure and protect the equipment until an inspection could be conducted on December 18, 2014 ("Agreement"). (FAC, Dkt. 20, Ex. F.) Plaintiff, Imperial, and Kraemer agreed that Kramer would release the equipment on December 18, 2014 and the equipment would be tested on December 19, 2014. (*Id.*) Also at that time, Plaintiff covenanted not to sue Kraemer for any claims asserted in the complaint before the court. (*Id.* at ¶ 4.) It was Imperial's understanding that, under the Agreement, it would be dismissed from the federal action. Also on December 17, 2014, this court held an initial hearing on Plaintiff's replevin action. The attorneys for Plaintiff and Imperial informed the court that their clients had settled. However, Plaintiff's counsel, Duree, interjected that Plaintiff still sought an order of replevin. The court denied Plaintiff's request. In the court's view, Plaintiff did not provide any authority justifying its request for replevin given that the parties had agreed to return of the equipment to Plaintiff. The court questioned whether it had authority to allow testing and discharge of the property knowing that it was involved in an accident that might ultimately result in a lawsuit in state court. Plaintiff

4

stated that it was his understanding that the federal lawsuit would be dismissed once the agreement was implemented. Plaintiff's counsel added: "We can't implement [the Agreement] now. So we are not going to dismiss Imperial." (*See* 12/17/14 Transcript of Proceedings at 21:23-24.) The court entered and continued the hearing to December 23, 2014. Plaintiff's counsel circulated a letter later that day stating that the "inspection of Hammer & Steel's equipment previously scheduled for Friday, December 19, 2014 will not take place. It may be rescheduled at a later date." (Def. Resp. to Pl. Resp. to Show Cause Dkt. 126, Ex. B.)

However, the inspection was not rescheduled as Plaintiff filed a renewed motion for replevin on December 19, 2014. (Ren. Mot. for Rep., Dkt. 12.) Imperial responded with a motion to dismiss, filed on December 22, 2014. On December 23, 2014, all parties to the lawsuit, as well as counsel for Mr. Das (the injured party), appeared in this court for status and for Plaintiff's presentment of its renewed motion for replevin, as well as for status on the inspection protocol for the subject equipment. The court was advised that Mr. Das had filed a civil action in state court the day before, on December 22, 2014, and that he would be seeking a protective order in that lawsuit. The court did not grant replevin of the equipment to H&S from Kraemer as Kraemer was not a party to the lawsuit. The parties continued the motion for replevin so that the interested parties could continue discussing the terms of a possible agreed order. In the meantime, Plaintiff was given leave to file his FAC to add Kraemer as a defendant.

Immediately following the December 23, 2014 hearing, counsel for Mr. Das sent an email to all parties involved in the litigation, including Kraemer, stating that he was going to seek a protective order in state court, with Kraemer's agreement. (Def. Resp. to Pl. Resp. to Show Cause, Dkt. 126, Ex. D.) In response, counsel for Plaintiff stated that, because his client would be retaining separate counsel for the state action, he could take no position on the

5

proposed protective order.  (*Id.*)  The protective order was entered in state court on December 24, 2014.  (FAC, Dkt. 20, Ex. I.)  In relevant part, the protective order states the following:

> Defendant, Edward Kraemer & Sons, Inc., will maintain the Hammer & Steel, Inc. vibratory hammer, and its appurtenances and the Terex crane, its boom, jib, O-Ring components and appurtenances in a protected and unchanged condition, and to the extent practicable protected from the elements until the proposed inspection contemplated by the parties is concluded and further order of this Court.

(*Id.*)

Despite the protective order, Plaintiff filed an amended complaint on January 7, 2015 adding Kraemer, Kenny Construction Company, and the Surety Companies as parties alleging conversion, breach of the December 17, 2014 Agreement, breach of the contract between Plaintiff and K&S, lien claims, and seeking replevin.  (FAC, Dkt. 20.)  After filing its FAC, Plaintiff filed its motion to discharge its replevin bond ("motion to discharge") on January 15, 2015.  (Mot. Disch. Rep. Bond, Dkt. 27.)  In its motion to discharge, which was granted on January 21, 2015 (Dkt. 33.), Plaintiff stated that Kraemer agreed to release the Vibratory Driver/Extractor System to it on January 19, 2015 and that the "release of the equipment subject to the Replevin Bond will render Count I of the First Amended Complaint (the Replevin Count) and the Replevin Bond moot."  (Mot. Disch. Rep. Bond, Dkt. 27 ¶¶ 3-4.)  Plaintiff's property was returned to it before the parties appeared in court on January 21, 2015.  Nevertheless, Plaintiff maintains its action for replevin against Kraemer (Count I), its action for conversion against K&S, Kraemer, and Kenny Construction (Count II), and its action for breach of the December 17, 2014 Agreement against Kraemer and Kenny Construction (Count III).  In addition, Plaintiff maintains its breach of contract claim against K&S (Count IV), its breach of payment and performance bonds against Defendants' insurers and surety companies (Count V), and its lien claims against Kraemer and Kenny Construction (Count VI).

6

## II. DISCUSSION

### A. Rule 11

On July 17, 2015, this court ordered Plaintiff to show cause as to (1) how it had a Rule 11 basis to bring claims for conversion and replevin in its FAC in light of the state court protective order entered on December 24, 2014; and (2) how the FAC satisfies the amount-in-controversy requirement if the court disregards Plaintiff's claims for conversion and replevin. *Johnson v. Waddell & Reed, Inc.*, 74 F.3d 147, 150 (7th Cir. 1996) ("The amended Rule 11…requires that any *sua sponte* action by the district court under the rule be initiated by an order describing the conduct that apparently violates subsection (b) and directing the offender to show cause why it is not in violation."); *See* Fed. R. Civ. P. 11(c)(1)(B).

In its amended response to the court's show cause order, Plaintiff fails adequately to address why its Rule 11 basis for its claims for conversion and replevin and for breach of the December 17, 2014 Agreement.[1] Instead, Plaintiff argues the following: (1) the state court protective order does not preclude damage claims for conduct that misled the state court into issuing the protective order; (2) this court's jurisdiction is not affected by the state court protective order because the federal suit was filed first; (3) the state court lacked jurisdiction to decide the right of possession; (4) the FAC alleges a viable cause of action for conversion that occurred on December 9 and 12, 2014, predating the state protective order; (5) none of the exceptions to the rule that jurisdiction once properly invoked is not lost by subsequent developments apply; and (6) the state court protective order does not vitiate the replevin count of the FAC. Each of Plaintiff's arguments fail to establish that it had a good faith basis to bring claims for replevin and conversion.

---

[1] Defendants argue that they could not execute the December 17, 2014 Agreement, in part, because of the state court protective order that followed on December 24, 2014.

First, Plaintiff's argument that the state court protective order does not preclude damage claims for conduct that *misled* the state court into issuing the protective order is unconvincing. Plaintiff fails to establish what conduct, specifically, misled the state court into issuing the protective order. It is uncontested that the protective order was sought by counsel for the injured party, Mr. Das, and not by any of the Defendants in this action. Further, this court noted during the December 17, 2014 hearing that it had concerns regarding spoliation since it was made aware that Mr. Das would likely file suit. In fact, Plaintiff's counsel was made aware of the fact that counsel for Mr. Das would be seeking the protective order before it was filed. Plaintiff's counsel even had an opportunity to object to the protective order but chose not to do so. The second argument—Rule 11 is satisfied as the federal suit was filed first—is equally unavailing. The court is concerned only with the FAC, and it is undisputed that the FAC was filed *after* the state court protective order. *Wellness Community-National v. Wellness House*, 70 F.3d 46, 49 (7th Cir. 1995); *See Nisbet v. Van Tuyl*, 224 F.2d 66, 71 (7th Cir. 1955); *Lubin v. Chicago Title and Trust Co.*, 260 F.2d 411, 413 (7th Cir. 1958); *Fry v. UAL Corp.*, 895 F.Supp. 1018 (N.D.Ill. 1995) ("Once an amended pleading is interposed, the original pleading no longer performs any function in the case.... [T]he original pleading, once superseded, cannot be utilized to cure defects in the amended pleading, unless the relevant portion is specifically incorporated in the new pleading."); 6 C. Wright, A. Miller, & Mary Kay Kane, Federal Practice and Procedure § 1476 at 556–57, 559 (1990).

Similarly, the court is unconvinced by Plaintiff's third argument that the state court did not have the right to determine possession. This court does not have jurisdiction to review the state court decision to issue the protective order. *Fredericksen v. L.A. Demolition, Inc.*, 54

Fed.Appx. 858 (7th Cir. 2002). Under the Rooker–Feldman doctrine,[2] lower federal courts do not have jurisdiction to review state court decisions outside the context of collateral attacks through habeas corpus, *Lewis v. Anderson*, 308 F.3d 768, 772 (7th Cir.2002). In applying this doctrine courts must consider "whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment." *Edwards v. Ill. Bd. of Admissions to the Bar*, 261 F.3d 723, 729 (7th Cir.2001) (*quoting Garry v. Geils*, 82 F.3d 1362, 1365 (7th Cir.1996)). The question is whether Plaintiffs' alleged injury is "inextricably intertwined" with the state-court protective order, precluding a federal court from reviewing its merits. *Manley v. City of Chicago*, 236 F.3d 392, 396 (7th Cir. 2001). Plaintiff's claim for conversion and replevin are indeed inextricably intertwined with the state protective order, and Rooker-Feldman therefore precludes this court from reviewing its merits.

Incorporated into its Rooker-Feldman analysis is Plaintiff's argument that its FAC is proper under Rule 11 because it alleges acts of conversion that occurred on December 9 and 12, 2014, before the state court protective order. That argument fails for two reasons: (1) as noted above, the FAC, and not the originally filed complaint, controls; and (2) the FAC's allegation for conversion is based on Defendants "denying possession to [H&S]…by agreeing to the Cook County Protective Order, without authorization from Plaintiff" and *not* the events that allegedly occurred on December 9 and 12, 2014. (FAC at ¶ 42, ECF No. 20.) In addition, Plaintiff even admitted in its motion to discharge that Count I of the FAC is moot and that its equipment has been returned. (Mot. Disch. Rep. Bond at ¶ 4, Dkt. 27.)

In sum, Plaintiff's FAC was not well-founded when filed as its claims for replevin (Count I), conversion (Count II), and breach of the Agreement (Count III) were based on conduct

---

[2] *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415–16, 44 S.Ct. 149, 68 L.Ed. 362 (1923).

controlled by the state court protective order, entered two weeks before Plaintiff's FAC. As a result, those counts are dismissed with prejudice.[3]

### B. Amount-In-Controversy

The next issue is whether the FAC satisfies the amount-in-controversy requirement now that the court finds that Plaintiff's claims for conversion and replevin have no good faith basis. In short, the remaining allegations of Plaintiff's FAC do not satisfy the amount-in-controversy requirement of 28 U.S.C. § 1332(a). In determining whether Plaintiff has satisfied the amount in controversy requirement, the court must engage in "an evaluation of the controversy described in the plaintiff's complaint and the record as a whole, as of the time the case was filed." *Uhl v. Thoroughbred Tech. & Telecomm., Inc.*, 309 F.3d 978, 983 (7th Cir. 2002). In the context of a challenge to "the plaintiff's allegation of the amount in controversy, the plaintiff must support its assertion with competent proof." *McMillian v. Sheraton Chicago Hotel & Towers*, 567 F.3d 839, 844 (7th Cir. 2009) (internal quotation marks and citations omitted). To satisfy this burden, Plaintiff "must prove ... those jurisdictional facts by a preponderance of the evidence." *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006) (stating that " '[r]easonable probability that jurisdiction exists,' a phrase with no provenance and no following outside this circuit, is banished from our lexicon"); *Blomberg v. Service Corp. Int'l*, 639 F.3d 761, 763 (7th Cir. 2011) ("If the party opposing federal jurisdiction contests the amount in controversy, the proponent must prove those jurisdictional facts by a preponderance of the evidence") (internal quotations omitted).

Plaintiff claims that it has satisfied the amount-in-controversy requirement for its breach of contract claims (Counts IV-VI) by alleging damages greater than $75,000. Incorporated into

---

[3] The court has already sanctioned counsel for Plaintiff under Rule 11. (ECF No. 118.). The court, in its discretion, will not sanction counsel for this Rule 11 violation. Instead, Counts I-III will be dismissed with prejudice.

that figure is the unpaid rent for use of Plaintiff's equipment in the sum of $27,000, $6,000 for return of the equipment, and $45,000 in attorneys' fees. While attorneys' fees typically do not count towards the amount-in-controversy, the parties' contract contains a fee-shifting provision. However, Plaintiff does not provide any details regarding its fees. "Conclusory assumptions about billing rates and the number of hours worked (which are not even provided in this case) do not rise to the level of competent proof regarding the amount in controversy." *Frederick Quinn Corp. v. West Bend Mut. Ins. Co.*, 2015 WL 2210336, at *3 (N.D. Ill May 8, 2015); *Stratton v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 2012 WL 1533456, at *2–3 (N.D.Ill. Apr. 25, 2012); s*ee also Am. Econ. Ins. Co. v. T.J. Copy Prods., Inc.*, 2004 WL 842510, at *2–3 (N.D.Ill. Apr. 20, 2004). Here, Plaintiff's allegation that it has incurred $45,000 in attorneys' fees is both inadequate and misleading. Included in that figure is work performed to pursue Counts I-III, which, as stated, violate Rule 11 and should not be included in Plaintiff's calculation. Plaintiff's conclusory statements regarding the amount of legal fees it has incurred make it impossible to determine if the work was related to the breach of contract claims. Given the lack of detail or explanation, there is simply no way to assess whether the charges billed are in fact related to the breach of contract claims or if the claimed fees are plausible and reasonable. *Frederick Quinn*, 2015 WL 2210336 at *4.

"Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." 28 U.S.C. § 1653; *Newman–Green, Inc. v. Alfonzo–Larrain*, 490 U.S. 826, 831 (1989) (section 1653 addresses "incorrect statements about jurisdiction that actually exists"). The court finds that the interests of justice support allowing Plaintiff to file a second amended complaint, if it satisfies Rule 11. Plaintiff need not provide the level of detail necessary for a fee

11

petition but given the issues concerning the amount in controversy, it must do more than it has done.

### III. CONCLUSION

For the reasons stated above, Counts I-III of Plaintiff's First Amended Complaint do not satisfy Rule 11 and are therefore dismissed with prejudice. Counts IV-VI do not satisfy the amount-in-controversy requirement of 28 U.S.C. § 1332(a) and are therefore dismissed. Consistent with this opinion and counsels' Rule 11 obligations, Plaintiff is granted leave to file an amended complaint by March 25, 2016. Defendants shall answer or otherwise plead by April 8, 2016. If no amended complaint is filed, this action will be dismissed for lack of jurisdiction. In light of the court's ruling, Plaintiff's motion for partial summary judgment [87] is denied as moot.

Date: March 14, 2016                                                      /s/

                                                                          Joan B. Gottschall
                                                                          United States District Judge