UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HAMMER & STEEL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 14-CV-10001 |
| | ) | |
| v. | ) | |
| | ) | Judge Joan B. Gottschall |
| K & S ENGINEERS, INC., | ) | |
| EDWARD KRAEMER & SONS, INC., | ) | |
| KENNY CONSTRUCTION COMPANY, | ) | |
| FEDERAL INSRUANCE COMPANY, | ) | |
| TRAVELERS CASUALTY AND | ) | |
| SURETY COMPANY OF AMERICA, | ) | |
| FIDELITY AND DEPOSIT COMPANY | ) | |
| OF MARYLAND, and LIBERTY | ) | |
| MUTUAL INSURANCE COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

On March 14, 2016, the court dismissed the first three counts of Hammer & Steel, Inc.'s ("Plaintiff" or "Hammer & Steel") first amended complaint for lack of a good-faith basis and allowed it to amend its complaint to show that the remaining counts exceeded the minimum amount in controversy under the diversity jurisdiction statute, 28 U.S.C. § 1332(a). The court expressed serious concerns about Plaintiff's bringing those claims when it filed this action on December 12, 2014, because everyone involved knew that the equipment Hammer & Steel wanted to recover would soon be the subject of personal injury litigation in state court. Ultimately, the court found that Plaintiff had no good-faith basis for continuing to press those claims in its amended complaint because a state court subsequently issued a protective order regarding the equipment. (*See* Mem. Op. at 8–12, Mar. 14, 2016, Dkt. 132.) Defendants move to dismiss Hammer & Steel's second amended complaint for lack of subject matter jurisdiction, contending that the attorney's fees sought in the remaining counts still fail to satisfy the amount-

1

in-controversy requirement. Hammer & Steel disagrees and asks the court to reconsider its dismissal of its replevin, conversion, and breach of contract claims. Because the amount in controversy "must be determined by the district court at the beginning of the suit, and [it] is not dependent on subsequent dismissal of individual claims used to satisfy the jurisdictional threshold," the court concludes that, though it may arguably have been vexatious, Plaintiff's conversion claim managed to satisfy the amount-in-controversy requirement at the commencement of this action and denies the motions to dismiss. *Clark v. State Farm Mut. Auto. Ins. Co.*, 473 F.3d 708, 711 (7th Cir. 2007) (citing *Johnson v. Wattenbarger*, 361 F.3d 991, 993 (7th Cir. 2004)).

**I. BACKGROUND**

This lease and property dispute stems from an alleged construction accident that occurred on December 1, 2014, in which Rudolph Das ("Das"), a construction worker, was allegedly injured. Edward Kraemer & Sons, Inc., ("Kraemer") and Kenny Construction Company ("Kenny") allegedly served as general contractors on the project. (See 2d Am. Compl. ¶¶ 9–10.) K&S Engineers, Inc. ("K&S") had leased a piece of heavy construction equipment, a "Model 58 HS Vibratory Driver/Extractor System," ("the equipment") from Hammer & Steel and had put it to use at the job site where the accident allegedly occurred. Hammer & Steel has consistently pleaded that the equipment's fair market value is $350,000. (*E.g.*, Orig. Compl. ¶ 6, Dkt. 1; 2d Am. Compl. ¶ 12.) The accident also allegedly involved a crane owned by Imperial Crane Services, Inc. ("Imperial"). Finally, in its amended complaints, Hammer & Steel sues several companies it alleges were sureties on the project's payment and performance bonds. (2d Am. Compl. ¶ 26.)

A Kraemer representative sent an e-mail message on December 5, 2014, stating that the equipment would be moved from the accident scene to a storage facility where it could be inspected. (*See* Imperial's Mot. to Dismiss, Dkt. 15, Ex. B.) That same day, an attorney for one of the contractors involved in the project reminded the participants of their obligations to avoid spoliation of evidence. (*See* ECF No. 1 Ex. B.) The parties have submitted evidence of communications coordinating efforts to move, inspect, and store the equipment. Those efforts apparently broke down on or around December 8 and 9, 2014,[1] and Plaintiff's counsel, David M. Duree ("Duree"), sent a letter to K&S terminating the rental agreement and seeking the equipment's return. (Orig. Compl., Dkt. 1, Ex. D.) Duree stated, "It is my understanding that the vibratory driver/extractor system is currently located at 15 N. 320 Route 25, East Dundee, Illinois 60118." (*Id*.) Duree asked K&S to arrange for Hammer & Steel to retrieve the equipment, after which Plaintiff would make the equipment "available for inspection, upon request, at the expense of the requesting parties" at Plaintiff's yard in Hazelwood, Missouri. (*Id*.) Duree's letter concluded with the warning that "[f]ailure to return the equipment will be an act of conversion." (*Id*.)

Despite the risk of spoliation if it prevailed, Hammer & Steel commenced this action against K&S and Imperial on December 12, 2014. (Orig. Compl., Dkt. 1.) In its original complaint, Hammer & Steel pleaded replevin, conversion, and breach of contract claims stemming from the defendants' failure to return the equipment. (*Id.*) In support of its breach of contract claim, Hammer & Steel alleged that K&S owed $27,000 for the use of the equipment. (*Id*.)

---

[1] A more fulsome description of the record evidence of the parties' communications can be found in the court's memorandum opinion and order entered March 14, 2016. (*See* ECF No. 132 at 24.)

3

On December 17, 2014, Hammer & Steel, Imperial, and Kraemer allegedly reached an agreement to secure and protect the equipment until an inspection could be conducted the next day ("Agreement"). (1st Am. Compl, Dkt. 20, Ex. F.) The Agreement required Kraemer to release the equipment on December 18, 2014 and the equipment would be tested on December 19, 2014. (*Id*.) Hammer & Steel also covenanted not to sue Kraemer for any claims asserted in the complaint before the court. (*Id.* ¶ 4.) The inspection did not occur, however, and Plaintiff renewed its previously denied motion for replevin on December 19, 2014. It was Imperial's understanding that, under the Agreement, it would be dismissed from the federal action. Also on December 17, 2014, this court held an initial hearing on Plaintiff's replevin action. The attorneys for Plaintiff and Imperial informed the court that their clients had settled. However, Plaintiff's counsel, Duree, interjected that Plaintiff still sought an order of replevin. The court denied Plaintiff's request because it did not provide any authority justifying its request for replevin given that the parties had agreed to return of the equipment to Plaintiff. The court questioned whether it had authority to allow testing and discharge of the property knowing that it was involved in an accident that might ultimately result in a lawsuit in state court. Plaintiff Das sued in state court on December 22, 2014. Two days later, the state court entered a protective order on Das's motion (to which Kramer agreed). (1st Am. Compl., Dkt. 20 Ex. I.) The protective order provided in pertinent part that:

> Defendant, Edward Kraemer & Sons, Inc., will maintain the Hammer & Steel, Inc. vibratory hammer, and its appurtenances and the Terex crane, its boom, jib, O-Ring components and appurtenances in a protected and unchanged condition, and to the extent practicable protected from the elements until the proposed inspection contemplated by the parties is concluded and further order of this Court.

(*Id*.)

With leave of court granted before entry of the protective order, Hammer & Steel filed an amended complaint in this action on January 7, 2015. (Dkt. 20.) It added Kraemer, Kenny, and the surety companies as defendants. (*See id*. ¶¶ 2–10.) The protective order notwithstanding, Hammer & Steel pressed forward with a replevin claim against Kraemer; a conversion claim against K&S, Kraemer, and Kenny; a claim that Kraemer and Kenny breached the December 17, 2014, settlement agreement; a claim against K&S for breach of the rental agreement; and a claim against the surety companies for breach of payment and performance bonds.

On July 17, 2015, this court ordered Plaintiff to show cause as to (1) how it had a Rule 11 basis to bring claims for conversion and replevin in its first amended complaint in light of the protective order; and (2) how the first amended complaint satisfies the amount-in-controversy requirement if the court disregards Plaintiff's claims for conversion and replevin. After receiving briefing, the court entered a memorandum opinion and order on March 14, 2016. It ruled that Plaintiff's first amended complaint "was not well founded when filed as its claims for replevin (Count I), conversion (Count II), and breach of the Agreement (Count III) were based on conduct controlled by the state court protective order, entered two weeks before" Hammer & Steel filed its first amended complaint. (Dkt. 132 at 9–10.) The court dismissed those counts with prejudice (*id*. at 10) and turned to the question of whether the remaining counts satisfied the $75,000 amount in controversy requirement for diversity jurisdiction (*id*. at 1012). Hammer & Steel claimed "the unpaid rent for use of Plaintiff's equipment in the sum of $27,000, $6,000 for return of the equipment, and $45,000 in attorneys' fees," (*id*. at 11) but the court found Hammer & Steel's attorney's fees too be too conclusory and speculative (*see id*. at 11 ("Conclusory assumptions about billing rates and the number of hours worked (which are not even provided in this case) do not rise to the level of competent proof regarding the amount in controversy."

5

(quoting *Frederick Quinn Corp. v. West Bend Mut. Ins. Co.,* No. 14 C 3850, 2015 WL 2210336, at *3 (N.D. Ill May 8, 2015)) (other citations omitted))). The court gave Hammer & Steel an opportunity to amend its complaint, stating that it did not "need [to] provide the level of detail necessary for a fee petition but given the issues concerning the amount in controversy, it must do more than it has done." (*Id*. at 11–12.)

Hammer & Steel filed a second amended complaint on March 17, 2016. (Dkt. 133.) Kraemer and K&S responded with separate motions to dismiss for lack of subject matter jurisdiction focusing on the fee allegations in the second amended complaint.

## II. ANALYSIS

In its responses to the pending motions to dismiss, Hammer & Steel urges the court to reconsider the dismissal of the first three counts of the first amended complaint. It cites Federal Rule of Civil Procedure 54(b), which provides in relevant part that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment." Defendants urge the court to bypass Hammer & Steel's request for reconsideration because it did not file a proper motion to reconsider. Hammer & Steel expressly addresses the reconsideration standard, however, and the court determines that it has jurisdiction because Hammer & Steel's conversion claim put in controversy an amount exceeding the jurisdictional minimum of 28 U.S.C. § 1332(a) before the state court's protective order issued.

### A. Reconsideration Is Procedurally Proper

At the outset, the court declines Defendants' invitation to avoid deciding Hammer & Steel's request for reconsideration on procedural grounds. Defendants complain that Hammer &

Steel asked for reconsideration in a response rather than by making a separate motion. Revising an order requires an order, and "[a] request for a court order must be made by motion." Fed. R. Civ. P. 7(b)(1). Defendants cite no case holding that Rule 7(b)(1) abrogates the court's power to reconsider an interlocutory order under Rule 54(b), however. Indeed, the Supreme Court has stated that an interlocutory order may be revisited in "any circumstance," but that "as a rule courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'" *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) (quoting *Arizona v. California*, 460 U.S. 605, 618 n.8 (1983)). The court does not need a motion to reconsider at all, for an interlocutory order may be reconsidered "*sua sponte* or on motion," *Young v. Murphy*, 161 F.R.D. 61, 62 (N.D. Ill. 1995) (citing *United States v. Jerry*, 487 F.2d 600, 605 (3d Cir. 1973)). Defendants had the chance to address the substance of Hammer & Steel's arguments in their reply. Meanwhile, by making a request for reconsideration in a response, Hammer & Steel effectively forfeited the opportunity to reply it would have enjoyed had it moved separately to reconsider. As Defendants identify no prejudice flowing from Hammer & Steel's use of responses to raise its request for reconsideration, the court exercises its inherent power to decide that request under Rule 54(b). *See Peterson v. Lindner*, 765 F.2d 698, 704 (7th Cir. 1985) ("while a district judge should carefully consider the propriety of re-examining a prior ruling . . . , when good reasons for doing so appear (such as new evidence or controlling law, or clear error), the 'law of the case' doctrine must yield to rational decisionmaking" (citation omitted)).

## B. Plaintiff's Conversion Claim Put The Equipment's Fair Market Value In Controversy Before The Protective Order Issued, And That Order Did Not Divest The Court of Jurisdiction

Federal district courts have original jurisdiction over suits between, among other things, citizens of different states "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a) (West 2017). Hammer & Steel invokes a venerable jurisdictional rule to argue that the court should have counted the values of its replevin, conversion, and breach-of-the-lease-agreement claims when calculating the amount in controversy. A federal court's "subject-matter jurisdiction 'depends on the state of things at the time of the action brought.'" *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473 (2007) (quoting *Mollan v. Torrance*, 22 U.S. (9 Wheat.) 537, 539 (1824)). Applying this general rule to the calculation of the amount in controversy under § 1332(a) yields the proposition that "if the amount in controversy exceeds the jurisdictional amount when a suit is filed in federal court, the fact that subsequent events reduce the total amount in controversy will not divest the court of diversity jurisdiction." *Grinnell Mut. Reinsurance Co. v. Shierk*, 121 F.3d 1114, 1116 (7th Cir. 1997) (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289–90 (1938) and *Pratt Cent. Park Ltd. P'ship v. Dames & Moore, Inc.*, 60 F.3d 350, 351 (7th Cir. 1995)). An apparently good-faith claim pleaded at the actions' commencement may be disregarded when computing the amount at stake if, and only if, it appears to a legal certainty that, at the time the suit commenced, the plaintiff could not recover more than the jurisdictional minimum. *See Back Doctors Ltd. v. Metro. Prop. & Cas. Ins. Co.*, 637 F.3d 827, 829–30 (7th Cir. 2011) ("allegations about the amount in controversy must be accepted unless it is impossible for the plaintiff to recover the jurisdictional minimum"); *Clark*, 473 F.3d at 711 ("Generally, we give plaintiffs the

benefit of the doubt in these matters, but a complaint will be dismissed if it appears to a legal certainty that the claim is really for less than the jurisdictional amount." (quoting *Del Vecchio v. Conseco, Inc.*, 230 F.3d 974, 978 (7th Cir. 2000))); *Grinnell*, 121 F.3d at 1116 (analyzing original complaint and holding that "it cannot be said that, when [the plaintiff] filed this suit, it appeared to a legal certainty that the suit was for less than the jurisdictional amount"). Under these principles, Hammer & Steel's conversion and breach-of-contract claims pleaded in its original complaint, despite their potential weaknesses, must be counted toward the amount in controversy.

The court is constrained to conclude that the conversion claim pleaded in the original complaint satisfied the amount-in-controversy requirement on December 12, 2014. When Hammer & Steel filed its original complaint, Das had not yet filed suit in state court or obtained a protective order. Those things happened, respectively, ten and twelve days later. Hammer & Steel predicated its replevin and conversion claims on the failure to respond to its demand for return of the equipment between December 9 and 12, 2014. (*See* ECF No. 1 ¶¶ 17–19 ("From December 9, 2014 to December 12, 2014 Plaintiff has repeatedly demanded and . . . [defendants] have refused to release the Vibratory Driver/Extractor System to the Plaintiff.").) In the Seventh Circuit, "the amount at stake to either party to the suit" determines the amount in controversy under the diversity-jurisdiction statute. *BEM I, L.L.C. v. Anthropologie, Inc.*, 301 F.3d 548, 553 (7th Cir. 2003) (citing *Del Vecchio*, 230 F.3d 974, 977 (7th Cir. 2000)) (other citation omitted). One way to determine the stakes to the plaintiff is to ask "what[] is required to satisfy the plaintiff's demand, in full, on the date the suit begins." *Hart v. Schering–Plough Corp.*, 253 F.3d 272, 274 (7th Cir. 2001). As a general rule, "the measure of damages for conversion of personal property is the market value of the property at the time and place of conversion plus legal

9

interest." *Priddle v. Malanis*, No. 12-CV-5831, 2017 WL 372302, at * 3 (N.D. Ill. Jan. 25, 2017) (quoting *Jensen v. Chi. & W. Ind. R.R. Co.*, 419 N.E.2d 578, 593 (Ill. App. Ct. 1981)) (determining amount in controversy); *see also Telemark Dev. Grp., Inc. v. Mengelt*, 181 F. Supp. 2d 897, 900 (N.D. Ill. 2002) (citation omitted) ("[T]he measure of damages for converted property is its fair market value at the time of conversion."). Similarly, an unchallenged, good-faith allegation of the value of property sought to be recovered on a replevin claim can be used to determine the amount at stake in that claim. See *Firestone Fin. Corp. v. King Amusements, Inc.*, No. 12 C 04519, 2013 WL 1286665, at *1 n.1 (N.D. Ill. Mar. 28, 2013) (finding requirement satisfied "because Firestone seeks replevin of gaming equipment securing nearly $95,000 in debt allegedly owed by Defendants"). No party disputes Hammer & Steel's allegations that the equipment's fair market value is $350,000. Accordingly, the conversion claim in Hammer & Steel's original complaint was over the amount-in-controversy threshold.

The question thus becomes whether Hammer & Steel pleaded itself out of federal court by including its replevin, conversion, and breach-of-contract claims in its first amended complaint filed after the state court issued its protective order. "[W]hen a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction." *Rockwell Int'l*, 549 U.S. at 473–74 (citing *Wellness Cmty.–Nat'l v. Wellness House*, 70 F.3d 46, 49 (7th Cir. 1995)) (other citations omitted). Hammer & Steel voluntarily amended its complaint on January 7, 2015, after asking for leave of court. Therefore, the court properly considers it but only to the extent it sheds light on "the state of things" when Hammer & Steel commenced this action. *Id*. at 473 (explaining that the alleged state of affairs in an original complaint and the true state of affairs are not always the same). So when a plaintiff voluntarily drops a claim in an amended complaint, the dropped

claim does not figure in the jurisdictional analysis. *Wellness Cmty.-Nat'l*, 70 F.3d at 49 (citing *Lubin v. Chi. Title & Trust Co.*, 260 F.2d 411, 413 (7th Cir. 1958) and *Fry v. UAL Corp.*, 895 F. Supp. 1018 (N.D. Ill. 1995)) (other citation omitted) (analyzing diversity jurisdiction even though plaintiff pleaded some claims allegedly arising under federal law in original complaint because plaintiff voluntarily amended complaint before trial and dropped federal-law claims). Other exceptions to the rule that subsequent events do not oust jurisdiction "involve events, such as dismissal of a non-diverse party" that create a situation in which the court would not have jurisdiction over the suit if it were refiled. *Johnson*, 361 F.3d at 993 (explaining that "[i]f a suit can start over in the same court immediately after being tossed out, there is no point to a dismissal" for lack of subject matter jurisdiction). Deciding a claim on the merits does not fall into this exception. *See id*. at 993–94. When the court involuntarily dismisses a claim (by granting a motion to dismiss for failure to state a claim or summary judgment, for example), that claim, as originally pleaded, ordinarily still counts when determining the amount in controversy. *See Clark*, 473 F.3d at 711 (considering claims dismissed at summary judgment under rule that "the amount in controversy . . . . is not dependent on subsequent dismissal of individual claims used to satisfy the jurisdictional threshold" (citing *Johnson*, 361 F.3d at 993)); *Johnson*, 361 F.3d at 994 ("Thus '[s]ubject matter jurisdiction is not defeated by the possibility that the complaint ultimately fails to state a claim.'" (quoting *Louque v. Allstate Ins. Co.*, 314 F.3d 776, 782 (5th Cir. 2002) (alteration in original))). Put another way, "[o]nce the [jurisdictional] facts have been established, uncertainty about whether the plaintiff can prove its substantive claim, and whether damages (if the plaintiff prevails on the merits) will exceed the threshold [for the amount in controversy], does not justify dismissal" for lack of subject matter jurisdiction. *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 542 (7th Cir. 2006) (citing *Johnson*, 361 F.3d at 991).

The first amended complaint expanded Hammer & Steel's dubious conversion theory, but it did not abandon the starting dates (December 9–12) pleaded in the original complaint:

> Defendants K & S Engineers, Inc., Edward Kraemer & Sons, Inc. and Kenny Construction Company converted the Vibratory Driver/Extractor System by taking possession on and after December 1, 2014, and refusing to return it to Plaintiff notwithstanding Plaintiff's demands for possession. On about December 18, 2014 K & S Engineers agreed to release any claims it had for possession of the Vibratory Driver/Extractor System, but by that time it was in the possession of Edward Kraemer & Sons, Inc., previously obtained with the assistance of K & S Engineers, Inc. and Imperial Crane Services, Inc.

(1st Am. Compl. ¶ 39, Dkt. 20; *see also id*. ¶¶ 22–24 (also alleging demands for possession on Dec. 9 and 12, 2014).) Indeed, Hammer & Steel included the same three claims in its second amended complaint to preserve them, so the court cannot say that Hammer & Steel voluntarily abandoned them.

Nor has anyone suggested it was legally certain, as compared to just unlikely, that Hammer & Steel would be unable to recover conversion damages at the case's inception. On March 14, 2016, Hammer & Steel's replevin, conversion, and breach-of-the-lease claims were dismissed based solely on concerns about their continued vitality after the state court issued its protective order. (*See* Mem. Op. at 8–12.) The parties have not suggested in their jurisdictional briefing that it would be legally impossible for Hammer & Steel to recover in conversion for alleged conduct predating the protective order's issuance (as alleged in the original complaint).[2] (*See id.*) Under Illinois law, conversion damages become "fixed and complete as of the date of the conversion." *Stathis v. Geldermann, Inc.*, 692 N.E.2d 798, 811 (Ill. App. Ct. 1998) (citing *Jensen*, 419 N.E.2d at 591). A conversion claim has the following elements: "(1) a right in the

---

[2] K&S did not even move to dismiss Hammer & Steel's first amended complaint under Rule 12(b)(6). Instead, it answered the conversion claim. (ECF No. 84).

property; (2) an absolute and unconditional right to the immediate possession of the property; (3) a deprivation of the right by the unauthorized and wrongful assumption of control, dominion, or ownership by a defendant; and (4) a demand for possession of the property." *Lewis v. Nat'l City Bank*, 814 F. Supp. 696, 699 (N.D. Ill. 1993) (quoting *Pavilon v. Kaferly*, 561 N.E.2d 1245, 1253 (Ill. App. Ct. 1990)). Hammer & Steel continued to plead that it demanded the equipment's immediate return on December 9 and 12, 2014, in its first amended complaint. (ECF No. 20 ¶¶ 22–24.) Without delving into the niceties of issues the parties have not briefed, it suffices to note that a defendant need not be in present possession of property to be liable in conversion.[3] *See, e.g.*, *Jensen*, 493 N.E.2d at 578 (holding evidence that defendant sold the plaintiff's property for cash supported jury's determination that defendant was liable for conversion). The court therefore need not concern itself with whether K&S or a party not named in the original complaint had possession of the equipment on December 12, 2014. As no party has given the court any reason to think that Hammer & Steel made a bad-faith claim for a completed conversion occurring before the protective order issued, the $350,000 amount the conversion claim put in controversy must be counted. *See Jones v. McCormick Harvesting Mach. Co.*, 82 F. 295, 295–96 (7th Cir. 1897) (holding court had jurisdiction in conversion action because even though it rendered judgment for a value of goods that fell below jurisdictional minimum, "it d[id] not appear . . . that the value was overstated in the declaration for the purpose of conferring jurisdiction" (citing *Pickham v. Wheeler-Bliss Mfg. Co.*, 77 F. 663 (C.C.N.D. Ill. 1897))).

---

[3] The court takes no position on how, if at all, the spoliation letters circulated before this case was filed effect Hammer & Steel's conversion claim. Kramer's answer pleads that the spoliation letters defeat the conversion claim, but it cites no authority. (*See* ECF No. 80 at 12-13.) The issue has not been briefed by the parties, and the court has been given no reason to think it would not go to the merits rather than jurisdiction.

**III. CONCLUSION**

Plaintiff did not voluntarily abandon its conversion claim, and that claim is premised, in part, on alleged conduct that occurred before the state court entered its protective order. Plaintiff claimed damages of $350,000 for conversion against K&S. Plaintiff's prospects on the merits of that claim may be dubious in light of the spoliation concerns, but the legal-certainty test ties the court's hands. Jurisdiction existed when this case commenced, and the conversion claim must be decided on its merits. This litigation has been embroiled in jurisdictional disputes for well over a year. Particularly in view of that fact, exercising supplemental jurisdiction over the remaining claims under 28 U.S.C. § 1367(a) is warranted. *See, e.g.*, *U.S. Fid. & Guar. Co. v. Shorenstein Realty Servs., LP*, 564 F. Supp. 2d 839, 842 (N.D. Ill. 2008) (exercising supplemental jurisdiction over third-party claim for attorney's fees under insurance policy even though claim did not independently satisfy amount-in-controversy requirement). As a result, the court sees little point in conducting an amount-in-controversy analysis of Plaintiff's other claims, as proposed in the motions to dismiss.

Accordingly, the motions to dismiss for lack of subject matter jurisdiction (ECF Nos. 136, 138) are denied. The court's March 14, 2016, order is vacated. Plaintiff's replevin claim pleaded in Count One of its second amended complaint is dismissed without prejudice as moot because Plaintiff admits the equipment has been returned. A status conference is set for March 3, 2017 at 9:30 a.m.

Date: February 13, 2017  /s/
Joan B. Gottschall
United States District Judge